OPINION OF THE COURT
Barbara Gunther Zambelli, J.
The defendant has been indicted for assault in the second degree (two counts), and attempted assault in the second degree (two counts) allegedly committed by her on or about January 23, 2005 while she was imprisoned at the Bedford Hills Correctional Facility in the County of Westchester. She now moves by notice of motion, supporting affirmation, and memorandum of law for omnibus relief. The People cross-move to amend count four of the indictment to correct a typographical error. The People’s response also consists of an affirmation in opposition and a memorandum of law. Upon consideration of these papers, as well as review of the grand jury minutes, exhibits and the consent discovery order entered in this case, the motion is disposed of as follows:
As part of her motion for omnibus relief, the defendant requested that this court conduct an in camera inspection of the minutes of the grand jury proceedings. With the consent of the People, this court conducted such an inspection, reviewing the evidence presented and the instructions given to the grand jury.
Sufficient evidence was presented to the grand jury to establish that the defendant, while a prisoner at Bedford, lunged at a correction officer while holding a plastic knife. Then, when other officers attempted to restrain her, she bit one officer on the arm and attempted to bite another officer’s hand.
With regard to count one of the indictment, under Penal Law § 120.05 (3), a person is guilty of assault in the second degree when, “[w]ith intent to prevent a peace officer . . . from performing a lawful duty . . . [s]he causes physical injury to such peace officer.” Peace officers include “correction officers of any state correctional facility or of any penal correctional institution” (CPL 2.10 [25]; see also Correction Law § 40 [3]). Physical injury is defined as an “impairment of physical condition or substantial pain” (Penal Law § 10.00 [9]). The intent to injure is not an element of this crime (see People v Rojas, 97 NY2d 32, 40 [2001]).
With regard to the remaining three counts of the indictment, under Penal Law § 120.05 (7), a person is guilty of assault in the second degree when “[h]aving been charged with or convicted of a crime and while confined in a correctional facility *1040 . . . pursuant to such charge or conviction, with intent to cause physical injury to another person, [s]he causes such injury to such person or to a third person.” This provision, in effect, raises conduct which would constitute third degree assault to second degree assault where the actor commits the act while imprisoned pursuant to a criminal charge or judgment of conviction (see People v Ramos, 111 AD2d 424 [1985]).
The defendant contends that counts one and two of the indictment must be dismissed because the grand jury was not presented with sufficient evidence to demonstrate that the correction officer she bit sustained a physical injury. However, the court finds that there was competent evidence to support the grand jury’s finding that the bitten officer sustained a physical injury within the meaning of Penal Law § 10.00 (9). Specifically, the evidence established that, as a result of the bite, the officer’s skin broke and she bled. The officer was subsequently taken to Westchester Medical Center, tested for HIV and hepatitis, and given a course of antibiotics to combat any infectious disease to which she might have been exposed. The officer also experienced pain and a lack of mobility for several months after the incident.
The defendant further argues that counts two through four of the indictment must be dismissed because when the incident occurred she was confined to a correctional facility as a youthful offender and not as a result of a judgment of conviction (see Penal Law § 120.05 [7]). In response, the People argue that the Legislature could not have intended to exclude youthful offenders from being charged under Penal Law § 120.05 (7) should they engage in assaultive behavior in prison. As in any case of statutory construction, this court’s primary obligation is to determine and give effect to the Legislature’s intent (see People v Dewall, 15 AD3d 498, 500 [2005]; McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [a]). “The court should not engage in ‘strained interpretation^]’ to extend criminal liability ‘beyond the fair scope of the statutory mandate’ ” (People v Dewall, supra, quoting People v Wood, 8 NY2d 48, 51 [I960]; see People v Hedgeman, 70 NY2d 533, 537 [1987]). The provisions of the Penal Law should not be construed so as to create penal liability from what is not plainly written, to “make out a crime by implication” (McKinney’s Cons Laws of NY, Book 1, Statutes § 276, Comment, at 446; People v Gottlieb, 36 NY2d 629, 632 [1975]), or to stretch “a statute to fit the facts” (People v Herskowitz, 80 Misc 2d 693, 697 [1975], affd 51 AD2d 1047 [1976], affd 41 NY2d 1094 [1977]).
*1041 Contrary to the People’s contention, the words of Penal Law § 120.05 (7) are plainly limiting. A defendant must be incarcerated pursuant to a charge or conviction when she commits an assault before the provision can be employed to raise such conduct from a class A misdemeanor (see Penal Law § 120.00 [1]) to a class D felony. As the Criminal Procedure Law makes clear, a youthful offender adjudication is not a judgment of conviction for a crime or any other offense (see CPL 720.35 [1]).
The unambiguous language of Penal Law § 120.05 (7) is a clear indication of the Legislature’s intent to limit the reach and scope of the statute. Had the Legislature intended a more expansive application of felony criminal liability for youthful offenders incarcerated in our state’s prisons it could have so provided by employing broader language. For example, in other statutory contexts, the term “conviction” is specifically defined to include youthful offender adjudications (see CPL 390.15 [1] [b] [provision governing HIV test]; CPL 530.12 [5] [provision governing the issuance of orders of protection for victims of family offenses]; CPL 530.12 [4] [provision governing the issuance of orders of protection to other crime victims]).
In this case, as the People concede, the defendant was incarcerated in Bedford as a youthful offender at the time of the incident and not as a result of a judgment of conviction. Furthermore, although the grand jury was properly instructed, it was never presented with evidence describing the reason for the defendant’s incarceration. Accordingly, even if a youthful offender adjudication could be considered the equivalent of a “conviction” within the meaning of Penal Law § 120.05 (7), the grand jury was presented with no evidence supporting that element of the offense. Consequently, counts two through four of the indictment, based on Penal Law § 120.05 (7), cannot be upheld since they were not supported by legally sufficient evidence to establish that the defendant committed the crimes charged (see CPL 70.10 [1]; 190.65 [1]). To hold otherwise would permit the People to indict defendants for violating Penal Law § 120.05 (7) even when they are incarcerated for noncrimes, such as a traffic infraction or civil contempt (see Vehicle and Traffic Law §§ 155, 1800 [b] [traffic infractions are not crimes and are punishable by imprisonment]; Judiciary Law § 753 [civil contempt is punishable by imprisonment]).
There was no other infirmity which would warrant a dismissal of the instant indictment. Accordingly, that branch of the motion which seeks dismissal of the indictment is granted to *1042 the extent that count two is reduced to assault in the third degree (see Penal Law § 120.00 [1]; CPL 210.20 [1-a]), and counts three and four are each reduced to attempted assault in the third degree (see Penal Law §§ 110.00, 120.00 [1]; CPL 210.20 [1-a]). The court further finds no facts which would warrant releasing any portion of the minutes of the grand jury proceedings to the defense (see CPL 210.30 [3]).
In light of this determination, the court need not address the People’s cross motion to amend count four of the indictment.