People v Ferretti (2022 NY Slip Op 06030)

People v Ferretti

2022 NY Slip Op 06030

Decided on October 27, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 27, 2022

110932
[*1]The People of the State of New York, Respondent,
v
Philip J. Ferretti, Appellant.

Calendar Date:September 9, 2022

Before:Garry, P.J., Egan Jr., Lynch, Clark and Ceresia, JJ.

Noreen McCarthy, Keene Valley, for appellant.
Jonathan J. Miller, District Attorney, Malone (Jennifer M. Hollis of counsel), for respondent.

Garry, P.J.
Appeal from a judgment of the County Court of Franklin County (Derek P. Champagne, J.), rendered December 10, 2018, convicting defendant upon his plea of guilty of the crime of failure to report a change in Internet status.
In November 2017, defendant waived indictment and agreed to be prosecuted pursuant to a superior court information (hereinafter SCI) charging him with failing to report a change in Internet status in violation of Correction Law § 168-f (4). The resulting plea agreement, which required defendant to waive his right to appeal, contemplated that defendant would be put on interim probation for one year. If successful, defendant would receive a split sentence of six months in jail followed by five years of probation; if unsuccessful, defendant would be sentenced to an unspecified term of imprisonment. Defendant pleaded guilty in conformity with the agreement and was placed on interim probation, and sentencing was adjourned. Defendant's performance on interim probation was ultimately unsuccessful, and County Court (Champagne, J.) thereafter sentenced him to a prison term of 1 to 3 years. This appeal ensued.
Initially, we reject defendant's assertion that his waiver of the right to appeal is invalid. Defendant was apprised that an appeal waiver was a condition of the plea agreement, and County Court (Richards, J.) both explained that the right to appeal was separate and distinct from the trial-related rights that defendant was forfeiting by pleading guilty and delineated the appellate rights that would survive the appeal waiver (see People v Dennis, 206 AD3d 1369, 1370 [3d Dept 2022]; People v Hall, 204 AD3d 1228, 1228 [3d Dept 2022]). Additionally, defendant executed a written waiver in open court and confirmed that he had read the waiver, understood its contents and had no questions relative thereto (see People v Hall, 204 AD3d at 1228; People v Lapoint, 201 AD3d 1258, 1258 [3d Dept 2022], lv denied 38 NY3d 1008 [2022]). Finally, although the written waiver contained some overbroad language, both the oral colloquy and the written waiver itself made clear that some appellate review survived (see People v Sims, 207 AD3d 882, 883 [3d Dept 2022]). Accordingly, we are satisfied that defendant knowingly, intelligently and voluntarily waived his right to appeal. In light of the valid appeal waiver, any challenge to the factual sufficiency of defendant's plea allocution is precluded and, further, is unpreserved for our review in the absence of an appropriate postallocution motion (see id. at 883-884; People v Brown, 163 AD3d 1269, 1271 [3d Dept 2018]).
Defendant's contention that the SCI is jurisdictionally defective "is not precluded by either his guilty plea or his waiver of the right to appeal[] and, further, is not subject to the preservation requirement" (People v Coss, 178 AD3d 25, 27 [3d Dept 2019] [internal quotation marks and citations omitted]; see People v Mathis, 185 AD3d 1094, 1096 [3d Dept 2020]).[FN1] An SCI "is jurisdictionally [*2]defective only if it does not effectively charge the defendant with the commission of a particular crime — for instance, if it fails to allege that the defendant committed acts constituting every material element of the crime charged" (People v D'Angelo, 98 NY2d 733, 734-735 [2002]; accord People v Chaney, 160 AD3d 1281, 1283 [3d Dept 2018], lv denied 31 NY3d 1146 [2018]). In this regard, "a charging instrument that incorporates by reference the statutory provisions applicable to the crime charged has been held to allege the material elements of the crime sufficiently to survive a jurisdictional challenge" (People v Brown, 163 AD3d at 1271 [internal quotation marks, brackets and citation omitted]; see People v Edwards, 180 AD3d 1111, 1111-1112 [3d Dept 2020], lv denied 35 NY3d 969 [2020]; People v Kamburelis, 100 AD3d 1189, 1189 [3d Dept 2012]) — provided such reference is not negated "by the inclusion of conduct that does not constitute the crime charged" (People v Boula, 106 AD3d 1371, 1372 [3d Dept 2013], lv denied 21 NY3d 1040 [2013]; see People v Hurell-Harring, 66 AD3d 1126, 1128 n 3 [3d Dept 2009]).
The SCI issued here incorporated by reference the provisions of Correction Law § 168-f (4), which provides, in relevant part, that a sex offender is required to register with the Division of Criminal Justice Services (hereinafter DCJS) "no later than [10] calendar days after any change of address, [I]nternet accounts with [I]nternet access providers belonging to such offender [or] [I]nternet identifiers that such offender uses." An Internet identifier, in turn, is defined as "electronic mail addresses and designations used for the purposes of chat, instant messaging, social networking or other similar [I]nternet communication" (Correction Law § 168-a [18]).
The felony complaint and supporting deposition allege that defendant created a Facebook account in January 2017 under the name Joseph James and thereafter utilized the messenger feature associated therewith to send harassing and threatening messages to his ex-girlfriend. "[T]he name one uses to interact with other users on Facebook — such as a screen name, pseudonym or alias — may be an Internet identifier that must be disclosed . . . if it is a 'designation used for the purposes of chat, instant messaging, social networking or other similar Internet communication'" (People v Ellis, 33 NY3d 582, 585 [2019] [brackets omitted], quoting Correction Law § 168-a [18]; accord People v Weeks, 188 AD3d 1420, 1423 [3d Dept 2020], lv denied 36 NY3d 1060 [2021]). Accordingly, the alias that defendant allegedly created and used to message his ex-girlfriend on Facebook would constitute an Internet identifier within the meaning of Correction Law § 168-a (18), and his corresponding failure to register such identifier with DCJS within 10 days would place him in violation of Correction Law § 168-f (4).
However, the SCI did not charge defendant with failing to register or report a change in an Internet identifier[*3]; instead, defendant was solely charged with failing to report a change in Internet status in violation of Correction Law § 168-f (4). Even assuming, without deciding, that the generalized language employed — failing to report a change in Internet status — coupled with the statutory reference otherwise would be sufficient to allege the material elements of the crime charged (see People v Chaney, 160 AD3d at 1283; People v Dubois, 150 AD3d 1562, 1564 [3d Dept 2017]), such reference was effectively negated "by the inclusion of conduct that [did] not constitute the crime charged" (People v Boula, 106 AD3d at 1372; see People v Iannone, 45 NY2d 589, 600 [1978]) — namely, "establishing a Facebook account."
The governing statutes were written, and have been interpreted, narrowly. It has been clearly established "that the existence of a Facebook account — as opposed to the Internet identifiers a sex offender may use to access Facebook or interact with other users on Facebook — need not be disclosed to DCJS pursuant to Correction Law § 168-f (4)" (People v Ellis, 33 NY3d at 586). Hence, the mere fact that defendant established a Facebook account was not an occurrence that defendant was required to report to DCJS, and his failure to do so did not constitute a violation of Correction Law § 168-f (4) (see id.).
The People argue that Ellis is distinguishable because the defendant in that case used his real name to interact with other Facebook users (see id. at 585), whereas defendant here allegedly used an alias to create his Facebook account. The legitimacy of the name used is not dispositive. Regardless of the name employed by defendant in creating the Facebook account, the People did not charge defendant with failing to register an Internet identifier; they charged him with failing to report a change in Internet status, i.e., "establishing a Facebook account." Stated differently, instead of "correctly alleg[ing] that the omission constituting the offense was [defendant's] failure to register an Internet identifier used by him to access and identify himself on the Facebook account that he created and maintained, [the SCI] improperly premise[d] the charge on his failure to register the Facebook account itself" (People v Weeks, 188 AD3d at 1423). As the SCI failed to charge defendant with conduct that constituted a crime, it must be dismissed (see People v Ellis, 33 NY3d at 586; cf. People v Boula, 106 AD3d at 1372-1373; compare People v Weeks, 188 AD3d at 1423). Defendant's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Egan Jr., Lynch, Clark and Ceresia, JJ., concur.
ORDERED that the judgment is reversed, on the law, and superior court information dismissed.

Footnotes

Footnote 1: To the extent that defendant challenges the factual sufficiency of the SCI, this nonjurisdictional claim is foreclosed by defendant's guilty plea (see People v Edwards, 180 AD3d 1111, 1112 [3d Dept 2020], lv denied 35 NY3d 969 [2020]).